**SO ORDERED.**

**SIGNED this 12 day of August, 2008.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re: )
)
STEVEN ALBERT DUGAN, ) Case No. 07-40899-13
)
           Debtor. )
_____)

**MEMORANDUM ORDER AND OPINION**

This matter is before the Court on the Trustee's Objection to Confirmation of the Chapter 13 plan of Debtor, Steven Dugan.[1] The bases for the Trustee's objections are that Debtor took improper "marital adjustments" on Lines 13 and 19 of Form 22C, that Debtor took an improper deduction for a transportation expense on Line 59 of Form 22C, and that Debtor's plan is not feasible.

_____

[1]Doc. 29.

The parties have filed a Joint Stipulation of Facts,[2] which the Court adopts, and have also filed briefs. The Court has jurisdiction to decide this matter,[3] and it is a core proceeding.[4]

**I.    FINDINGS OF FACT**

In June 2007, Debtor filed his Chapter 13 bankruptcy petition, schedules and the "means test" form, Form 22C, Statement of Current Monthly Income and Disposable Income Calculation.[5] This form, in the Chapter 13 context, is used to both determine over what period of time a debtor must pay into the Chapter 13 plan (called the "applicable commitment period"), and to determine the amount above median income debtors must pay to unsecured creditors over the life of the plan. In this case, Debtor has claimed certain deductions from income on Form 22C. If allowed, he will be deemed a below median income debtor, which will in turn result in an applicable commitment period of 36, rather than 60, months, and will result in Debtor's plan payment being based on his "actual" income and expenses, shown on Schedules I and J, rather than the disposable income calculated by Form 22C.

Debtor, who is self employed and thus does not receive any sort of pay-stub or payment advice from an employer, reports average monthly gross and net income of $1,000. Debtor's non-filing spouse reports average gross income of $3,861.[6] Debtor's joint family expenses, as reported

---

[2]Doc. 41.

[3]28 U.S.C. § 1334.

[4]28 U.S.C. § 157(b)(2)(L).

[5]This form has now been amended three times by Debtor. *See* Docs. 1 (original), 22, 28, and 52. The last such amendment was filed after the Court orally announced the decision that is the subject of this memorandum, and the Court will not consider that latest amendment in this decision.

[6]The parties have stipulated that the spouse's gross monthly income is $3861, which is the amount Debtor inserted on Schedule I. Debtor reported only $3,433 as his spouse's gross monthly income reported on each Form 22C, however. The parties do not discuss this discrepancy, but it may well result from the requirement that "current monthly income" on Form 22C be based upon a six month average of gross income ending on the last day of the month before

2

on Schedule J, total $3,576. On Form 22C, Debtor lists "marital adjustments" in the amount of $500 on both Lines 13 and Line 19.[7] Debtor claims that his non-filing spouse spends $500 per month on items and expenses that are personal to her and thus outside the IRS guidelines that are incorporated into Form 22C. If Debtor is allowed to deduct the $500 a month on Line 13, his current monthly income will be below the median income for Kansans for purposes of determining the applicable commitment period.

If Debtor is allowed to deduct the $500 a month on Line 19, his current monthly income will also be below the median income for Kansans for determining his disposable income. In that instance, the amount he must pay into the plan will be determined by Schedules I and J. If the Line 19 deduction is not allowed, Debtor's current monthly income will be above the median income for Kansans, and the amount he must pay into the Chapter 13 plan for unsecured creditors will be determined according to Form 22C.

Additional facts will be discussed below, when necessary.

## II. ANALYSIS

### A. Line 13 Marital Adjustment

The Trustee's first objection to Debtor's Chapter 13 plan is that Debtor claims the applicable commitment period is only 36 months, while the Trustee contends it should be 60 months pursuant to 11 U.S.C. § 1325(b)(1)(B) and (b)(4)(A).[8] Section 1325(b)(1) provides that the Court cannot

---

the filing of the petition, rather than the actual income on the date of the filing. Because both parties stipulated that the Court should use $3861 as the spouse's gross income, that is the number the Court will use in this opinion.

[7]Doc. 22.

[8]This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

3

confirm a Chapter 13 plan over the objection of the Trustee or the holder of an allowed unsecured claim unless:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Because this Chapter 13 plan does not propose to pay all unsecured claims in full, the Court may only confirm the plan over the Trustee's objection if Debtor is applying all of his projected disposable income during the applicable commitment period toward the plan for the payment of unsecured claims. The burden of proof for an objection under 11 U.S.C. § 1325(b) is a shifting burden where the objecting Trustee is initially required to produce satisfactory evidence that Debtor is not devoting his "projected disposable income" to his Plan and, once this burden is met, the burden shifts to Debtor to demonstrate, by a preponderance of the evidence, compliance with 11 U.S.C. § 1325(b).[9]

The applicable commitment period referenced in § 1325(b)(1)(B) is defined in § 1325(b)(4). Section 1325(b)(4) provides that the applicable commitment period for a Chapter 13 plan is 3 years or not less than 5 years, "if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12," is, under the facts of this case, not less than the median income of a two person family in Kansas.

---

[9] *See In re Barnes,* 378 B.R. 774, 777 (Bankr. D.S.C. 2007).

"Current monthly income" is defined in § 101(10A)[10] to mean "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income" for the six months preceding the filing of the bankruptcy petition. Current monthly income also expressly includes "any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)."[11]

No one disputes that the portion of the non-filing spouse's income that is regularly contributed to the household expenses of a debtor or his dependents must be included as part of that debtor's current monthly income, as that term is specifically defined under § 101(10A)(B). What is in dispute is whether all the non-filing spouse's gross income must be attributed to a debtor solely for determining the applicable commitment period, notwithstanding that some portion of that spouse's income is not actually received by the debtor or used to pay the debtor's (or his dependents, if any) household expenses.

---

[10]Since Congress uses the exact phrase—current monthly income— in § 1325(b)(4) that it specifically defines in another section of the Code, the Court must assume that when Congress used that defined phrase in § 1325(b)(4), that it has the same meaning as it does in § 101(10A).

[11]11 U.S.C. § 101(10A)(B). Section 101(10A)(B) also provides certain exceptions to the definition of current monthly income, but none apply here.

5

The Court agrees with the decisions in *In re Grubbs*,[12] *In re Borders*,[13] as well as the analysis provided by *Collier on Bankruptcy*,[14] and finds that when the income of a non-filing spouse is not available to cover household expenses—because the non-filing spouse has demonstrated an intent not to contribute a certain amount of his or her income to the filing spouse or to cover the filing spouse's expenses, that money need not be included as part of Debtor's current monthly income and should not be included to determine the applicable commitment period under § 1325(b)(4)(A)(ii). Section 1325(b)(4)(A)(ii) provides that a court should consider the "current monthly income of the debtor and the debtor's spouse combined" to determine the applicable commitment period. Again, § 101(10A)(A) defines "current monthly income" as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) . . . ." By definition, a debtor's spouse has no current monthly income except in a joint case. In a case filed individually by a married debtor, current monthly income applies solely to income received by the debtor. The definition of "current monthly income" includes income received by the debtor's spouse only when the debtor has filed a joint case with his or her spouse.[15]

This interpretation of § 1325(b)(4)(A)(ii) does not make the phrase "and the debtor's spouse" surplusage. The debtor's spouse will have current monthly income, as that term is defined in §

---

[12] 2007 WL 4418146 (Bankr. E.D. Va. 2007) (holding that for purposes of determining the applicable commitment period, income of non-filing spouse is used only to extent that the income is used to pay debtor's household expenses).

[13] 2008 WL 1925190 (Bankr. S. D. Ala. 2008) (holding that debtor may subtract the portion of her non-filing spouse's individual expenses, not used to support the overall household, in determining the applicable commitment period).

[14] 8 Collier on Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev 2007).

[15] *See In re Quarterman,* 342 B.R. 647, 650 (Bankr. M.D. Fla. 2006) (stating "Because the debtor's spouse has no current monthly income, the applicable commitment period will be based only on the debtor's current monthly income." 8 Collier on Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev 2007)).

101(10A), when two debtors file a joint case.[16] The phrase "and the debtor's spouse" in § 1325(b)(4)(A)(ii) thus acknowledges that a debtor's spouse will have current monthly income in a joint case and, in such a case, directs the court to consider the spouse's current monthly income in determining the applicable commitment period. In the case of a married debtor who opts to file individually, the Court also considers the phrase "and the debtor's spouse." The definition of "current monthly income" effectively instructs the Court to add zero as the current monthly income of the nonfiling spouse.[17]

Interpreting § 1325(b)(4)(A)(ii) in this manner comports with the policies underlying the Bankruptcy Code. The interpretation advanced by the Trustee would subject a married debtor filing individually to greater risk of plan failure. Extending a debtor's plan for an additional two years would subject that debtor to two more years where some unanticipated emergency could render it impossible for the debtor to make plan payments.[18] Here, there is no evidence that this Debtor is better equipped to deal with such emergencies than a single debtor with the same current monthly income. Again, that is because the additional income of a spouse is completely irrelevant if that spouse's income is not made available to cover household expenses so that the debtor has more money available to make the plan payment.

The Court can think of no reason why Congress would require the Court to treat a married debtor, who elects not to file jointly with his spouse, as if the case was filed jointly solely for the purpose of calculating the applicable commitment period, but provide different treatment for all

---

[16] 11 U.S.C.A. § 101(10A).

[17] *See* 8 Collier on Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev 2007).

[18] *Id.*

7

other aspects of the means test. There is no readily apparent basis for requiring a debtor to account for all of his spouse's income when determining whether a Chapter 13 case must run for 36 or 60 months, but then allowing at least a portion of the spouse's income to be totally disregarded when deciding all other issues, such as what the debtor's projected disposable income will be, or whether it is an abuse of the bankruptcy process to allow that debtor to file a Chapter 7 case in the first instance.

Instead, the Court finds the more reasonable interpretation of § 1325(b)(4) is that Congress inadvertently failed to include the qualifier that the spouse's current monthly income must only be "combined" with the filing debtor in a joint case by putting those words in parenthesis (or elsewhere), as it did in the definition of current monthly income. This interpretation of the statute brings the treatment of the spouse's income into conformity with how that income is treated elsewhere in the means test calculations and avoids an anomalous result.

Analysis by another well respected author regarding Chapter 13 issues further strengthens the Court's view that § 1325(b)(4) should be read to only include all of a spouse's income when the spouse is a joint debtor. As noted by Judge Lundin in his Chapter 13 treatise, applying a literal reading of § 1324(b)(4) would require the court to "combine" the current monthly income of the debtor—as that term is specifically now defined—with the current monthly income of the non-filing spouse. In other words, the current monthly income for each spouse would be separately calculated and then combined to determine the applicable commitment period. Although one could read the statute this way, a closer examination shows that such a reading of § 1324(b)(4) could not have been intended.

8

If the Court were to apply this approach, the combined current monthly income for this Debtor and his spouse would be vastly higher than their actual income combined. That is because a large portion of Debtor's "current monthly income," as that term is defined in § 101(10A), already includes a portion of his wife's income, and vice versa. Using the figures from this case to illustrate, this Debtor's current monthly income, as statutorily defined, would include his actual income of $1,000 plus that portion of his wife's income that she regularly contributes to the household expenses, which is at least $3,361 (assuming the $500 deduction is proper), for a total current monthly income of $4,361 for Debtor. The spouse's current monthly income includes her actual income of $3,861 plus that portion of Debtor's income that is regularly used for household expenses, which is here the entire amount of $1,000, for a total current monthly income of $4,861 for the spouse.

If the Court were to apply the statute in this fashion, the current monthly income of Debtor "combined" with the current monthly income of his spouse would total $9,222, despite the fact their combined actual income only totals $4,861. That result makes no sense when the statute is read in concert with other statutory changes that implement the means test.[19] Therefore, the Court will interpret the statute in the most reasonable manner, and that is to include all the spouse's current monthly income in the event of a joint case, but include only that portion of the spouse's income that is regularly used to pay for household expenses of a married debtor filing individually, as is done in other sections of the Code.[20]

---

[19]This Court adopts the "quintessentially Texan rule" of statutory construction—that courts are to be governed by the rules of common sense. This Court believes that Kansas courts are similarly governed. *See In re Brodowski*, __ B.R. __, 2008 WL 2852878 (Bankr. S.D. Tex. 2008).

[20]*See* § 101(10A)(A), which is applied in § 707(b)(2)(A) and § 1325(b)(2).

9

Accordingly, the Court finds that it is appropriate for a married debtor filing individually to deduct on Line 13 that portion of his or her non-filing spouse's income that is not paid on a regular basis for the debtor's (or his dependents') household expenses, since that is income to which such debtor does not have access to fund the plan or pay monthly household expenses. The Court also finds here, however, that Debtor has failed to properly document that the deduction he claims—$500—is the correct amount in this case. Debtor was ordered on July 23, 2008 to either provide appropriate documentation to the Trustee within 20 days, or file an amended Form 22C that removes the marital adjustment. This issue will be discussed in more detail below.

### B.     Line 19 Marital Adjustment

The Trustee's second objection relates to the marital adjustment taken by Debtor on Line 19 of Form 22C. Line 19 is contained in that portion of Form 22C that is used to determine how much disposable income a debtor has available to pay unsecured creditors. Debtor has entered a deduction of $500 on Line 19, claiming that this amount represents the portion of his wife's income that is not regularly used for his household expenses or those of his dependents.

As noted above, § 1325(b)(1)(B) requires Debtor to devote to his Chapter 13 plan all of his projected disposable income for the applicable commitment period. Section 1325(b)(2) defines the term "disposable monthly income" as the current monthly income received by the debtor, with certain exclusions, less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. Section 1325(b)(3) states that the "amounts reasonably necessary to be expended" under § 1325(b)(2) <u>shall</u> be determined in accordance with § 707(b)(2) <u>only if</u> the debtor has current monthly income greater than the median family income for families of the same size in Kansas.

10

Section 1325(b)(3) does not itself separately require the inclusion of a spouse's current monthly income in the calculations. Therefore, the only portion of Debtor's wife's income that must be included in Part III of Form 22C is that portion that constitutes part of Debtor's current monthly income under § 101(10A)(B). Again, that amount is narrowly defined as the amount the third party "regularly contributes for the household expenses of the debtor or the debtor's dependents." The Line 19 Marital adjustment is provided to allow married debtors filing individually to deduct that portion of their non-filing spouse's income that is not encompassed within § 101(10A)(B).

Because of the difference in the statutory language between § 1325(b)(3) and § 1325(b)(4), the Trustee does not object, in general, to Debtor's deduction on Line 19 for that portion of his spouse's income that she does not regularly contribute to pay Debtor's household expenses or those of his dependents. The Trustee's objection, which this Court finds is well grounded, instead focuses on the lack of documentation provided by Debtor to show that the claimed portion of his spouse's income is actually and routinely used solely for her personal use, and is not otherwise accounted for on Form 22C. The Trustee also asks the Court to take a narrower view of what is properly included in a Line 19 marital adjustment than Judge Nugent did in *In re Shahan*.[21] As will be discussed later, this issue does not appear ripe for decision under the facts of this case.

Unfortunately, in this case Debtor has essentially declined to provide any documentation to support the marital adjustment on Line 13 or Line 19.[22] Debtor bears the burden of proving that he is devoting all of his disposable monthly income to his Chapter 13 plan, and the Court will not allow

---

[21] 367 B.R. 732 (Bankr. D. Kan. 2007).

[22] Debtor claims he is "unable" to provide the requested documents because his wife was "unable or unwilling to provide him with receipts, statements or other documentation relating to her financial status." He further states he "believes that as a matter of law he is not required to provide evidence of his spouses (sic) expenses...." Doc. 50.

11

this Debtor, or any other debtor, to arbitrarily pick a number out of the air for a marital adjustment on Lines 13 and 19 without providing sufficient documentation, when it is requested by the objecting party, to show that the claimed amounts are properly deducted. In other words, Debtor must demonstrate that he really does not have access to the funds to help pay the expenses of the household.

Although Debtor may well have properly calculated the amount of the marital adjustment on Line 19, he must provide evidence satisfactory to the objecting party or the Court to support that deduction when that information is requested. That proof can take the form of receipts, documents, testimony or some other form of credible, admissible evidence.

In this case, Debtor only sought a marital adjustment of $500, which is coincidentally the amount that is necessary to reduce his income below the median income level for Kansas. In other words, out of his non-filing spouse's monthly income of $3861, Debtor claimed that all but $500 was contributed to household expenses by his spouse. In Debtor's brief, he claims that his wife has approximately $628 withheld from her paycheck each month to pay her income taxes. The taxes Debtor's wife's employer is required to withhold,[23] under state or federal law, is not money that is used "on a regular basis for Debtor's (or his dependents') household expenses, would thus not fall within § 101(10A)(B), and could therefore be properly deducted on Line 19.[24] It appears that in this particular case, that single deduction, alone, would be sufficient to support the deduction sought on

---

[23]If the Trustee could show that the spouse's employer over-withholds, that she routinely receives a tax refund, and that that refund DOES go to pay household expenses of Debtor, this issue might be decided differently.

[24]Obviously, if the withholding is deducted on Line 19, it cannot also be deducted on Line 30, under "Other Necessary Expenses," which is for the amount actually incurred for taxes.

12

Line 19 if Debtor would merely provide the Trustee documentation to support the claim that the asserted amount is properly withheld from his spouse's payroll checks on a regular basis.

The Trustee has also expressed concern that Debtor not be allowed to include items in the marital adjustment on Line 19 that are also deduct on Line 24, which provides for a deduction for the food, clothing, household supplies and personal care of both Debtor and his spouse, since Debtor is claiming a two-person household. It is in this regard that the Trustee argues Judge Nugent's *In re Shahan*[25] decision potentially went too far in allowing deductions.

Although the Court shares the Trustee's concerns about not allowing a debtor to essentially double dip for certain expenses by counting them both on Line 19 and Line 24, the Court finds that such a problem is unlikely to occur in this case. If Debtor's $500 deduction on Line 19 is allowed, Debtor would be a below median income debtor for purposes of determining disposable income, and the standard deductions allowed in Part IV of Form 22C, including the deduction for living expenses on Line 24, will not be at issue in this case. How to deal with deductions that could potentially apply to both Line 19 and Line 24 will undoubtedly have to be eventually decided, but that appears to be a case for another day since Line 24 will likely only come into play in this case if Debtor is not allowed any deduction on Line 19.

Based upon Debtor's unwillingness or inability to provide any documentation to support the Marital adjustment on Lines 13 and 19 of Form 22C, the Court finds that this deduction is not allowable at this time. The Court orally ordered Debtor, on July 23, 2008, to provide the Trustee with documentation sufficient to support the $500 deduction within 20 days, or to file an amended Form 22C that removes the marital adjustment.

---

[25] 367 B.R. 732 (Bankr. D. Kan. 2007).

### C. Line 59 transportation expense

Although this decision likely decides the only two remaining legal issues in this case, the Court notes that the Trustee has raised two other issues. First, the Trustee questioned an additional expense claim on Line 59, claiming Debtor had not documented the expense. This objection has been mooted by Debtor's Amended 22C filed January 25, 2008, which claimed no deduction. The third amended 22C also seeks no such deduction, so the Court assumes this objection is moot.

### D. Feasibility

The other issue raised by the Trustee is that if the non-filing spouse actually does not make $500 of her income available to Debtor each month (i.e., the amount of the marital adjustment claimed on Lines 13 and 19), then Debtor's plan is not feasible. If Debtor's non-filing spouse legitimately and regularly does not give him any access to $500 per month, then a review of Schedules I and J, which this Court uses to assist in determining feasibility for below median income debtors, shows that Debtor's plan is not feasible.

Debtor's Chapter 13 plan provides payments of $95/month, which essentially is used to only pay his attorney fees and a $150 claim for some personal property. That is all he intends to pay. His Schedule I includes all of his salary, with no deduction for taxes as a self-employed person, and reflects his spouse's gross income at $3,861. Schedules I and J then show a <u>net</u> monthly income of $3,682. Schedule J shows joint expenses of $3,576, leaving $106 remaining for him to pay his $95 monthly plan payment. But if we back out the $500 that Debtor is representing, under oath, is

14

unavailable to him from his spouse's income, this only leaves $3,182 in net joint income against expenses of $3,576. These numbers demonstrate that Debtor would be unable to fund this plan.[26]

**IV.    Summary**

The Court holds that the marital adjustment referenced on Line 13 of Form 22C is supported by a reasonable interpretation of § 1325(b)(4) to allow the deduction, and the deduction will be allowed if, and only if, Debtor provides the Trustee with appropriate documentation or presents other credible and admissible evidence to support the deduction. The Court also holds that the marital adjustment available on Line 19 of Form 22C is appropriately included in the calculation of current monthly income for purposes of determining disposable income—but again, only to the extent Debtor can provide documentation to establish that the adjustment is justified.

The Court will continue the Trustee's objections to the next confirmation docket. If the Debtor timely submits documentation to the Trustee that justifies the marital adjustments on Line 13 and 19 of Form 22C, the Court will then overrule the Trustee's objection on all issues except feasibility.[27] If Debtor has failed to provide the appropriate documentation, the Court will likely grant the Trustee's objection based on the Debtor's failure to prove his entitlement to the $500 marital adjustment.

As to feasibility, the Debtor must show (if he has justified the marital adjustment with appropriate evidence satisfactory to the objecting Trustee or the Court) that the income he does have available each month to fund his plan, minus reasonable and necessary expenses, is sufficient to

---

[26]This problem is made even worse by the latest amended Form 22C filed on August 6, 2008 (Doc. 52), as Debtor is apparently now claiming a marital adjustment of $1,179. This means Debtor is now claiming that he has no access to $679 more than he initially claimed, making his plan appear that much less feasible.

[27]If, as Debtor's third amended Form 22C suggests, Debtor is now claiming more than the $500 marital adjustment, the documentation must obviously support the newly claimed number.

Case 07-40899    Doc# 54    Filed 08/12/08    Page 15 of 16

enable him to make the monthly plan payment to the Trustee. Failure to do so will result in the case being subject to dismissal under 11 U.S.C. § 1307(c)(1) (unreasonable delay) or § 1307(c)(5) (denial of confirmation of plan and denial of request for additional time to file another plan).

**IT IS SO ORDERED.**

###